**FRANKFORT DISTILLERY, Inc., v. DOUGH-ERTY DISTILLERY WAREHOUSE CO., Inc.**

District Court, E. D. Pennsylvania. June 26, 1928.

Frank Rogers Donohue, of Philadelphia, Pa., for plaintiff.

Chester N. Farr, Jr., and William A. Glasgow, Jr., both of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. The conclusion reached is that a decree as herein indicated should be entered in favor of the plaintiff. The defendant maintains what may be called a whisky warehouse. Independently of the internal revenue laws and regulations and those forbidding the traffic in alcoholic liquors for use for beverage purposes and regulating their sale for other lawful uses, the defendant is a warehouseman. As such it received on deposit for care and safekeeping whiskys for which it issued warehouse receipts or certificates. These receipts or certificates were the evidence of title to the whisky therein designated, and in form were the promises of the warehouseman to deliver that for which the certificates called upon compliance with the conditions of issue and surrender of the certificates duly endorsed. Part of the whiskys which are the subject of this controversy were whiskies which it will answer present purposes to say had been manufactured and kept in storage by the defendant, for which its own certificates were outstanding and the remainder had been transferred from the warehouse of another distillery, known as the New Hellam, by order of the Commissioner of Internal Revenue, to the warehouse of the defendant for concentration purposes. For the last mentioned whiskys the certificates of the New Hellam Distilling Company were outstanding.

The discussion of the rights of the parties may begin with the proposition that prior to the adoption of the Eighteenth Amendment whisky was lawful property in general, subject to the same laws which pertained to other forms of property, and specially and in particular subject to the internal revenue laws and regulations applicable to that form of property. Since the adoption of the national prohibition policy, intoxicating liquors, as that phrase is defined by law, have been divided into two classes. One is the class of contraband, in which no right of property can subsist. The other consists of lawful liquors in which precisely the same right of property subsists as before except that this right of property is subject to the further regulation and control of the laws enacted to prevent its diversion to unlawful purposes.

With these premised propositions in mind, the finding is made that the whisky here in question was lawful liquor, and further (subject to the questions raised by the defense interposed) the lawful title thereto is now vested in the plaintiff. These findings carry the corollary that the plaintiff (subject as before) should be granted the prayed for relief.

This takes us to the defense. It in turn begins with the general proposition that as the whisky in dispute and the defendant as its custodian is subjected to the directions of the National Prohibition Law (27 USCA), the defendant should not by the decree of this court be ordered to do what would be a violation of that law and is under its provisions an offense and punishable as a crime. The defense then proceeds to the particular proposition that (under the conditions here existing) the liquor in question is in the warehouse of defendant as a bonded distillery warehouse for concentration purposes, and

that it cannot be removed therefrom otherwise than as provided by law for concentration purposes and upon the initiative of the Commissioner, and his finding that the warehouse of defendant is unfitted for concentration purposes. This proposition concedes that, upon receipt of such order for removal for concentration purposes, the defendant (subject to the further defenses next outlined) should deliver the whisky. These latter defenses are that there are outstanding other certificates and receipts purporting to have been issued by the New Hellam Company for the same whisky (at least in part) for which the certificates tendered by the plaintiff call, and there is a claim for storage or other charges due to the former warehouseman.

The first general proposition advanced by the defendant is of course conceded, but is met by the suggestion that the protection of the defendant may be assured in the form of the decree by the provision that the plaintiff must have (as it did have) the permits required by law to authorize the withdrawal and removal of the whisky.

We think the general objection made may be thus met and removed. The particular proposition advanced by the defendant is declared by the plaintiff to be unsound. This is the real issue between the parties. It raises the question of the lawfulness of the removal. The plaintiff asserts that the defendant has no concern with this question which is wholly one between the plaintiff and the government. We think, however, that the defendant has a concern with the question because, in the first place, official permit to a removal will not suffice if it have not the sanction of the law, and again, if the defendant has a right to the custody of the whisky until removed in accordance with law, it has a selfish business reason for resisting removal to another warehouse. No one can grasp the full significance of this branch of the defense without an intensive study of the law and the applicable regulations, and no one can be sure he has secured this grasp in the limited time at the disposal of a trial court.

Recurring, however, to the proposition with which we began, that with the revenue and prohibition laws eliminated, the plaintiff (ignoring the other defenses) has made out its case, we are brought to the inquiry of how these laws affect the title to this whisky which the plaintiff has established. To assure the payment of taxes one requirement is that the liquors awaiting withdrawal shall be kept "in bond" in a "bonded warehouse."

Ignoring the distinction because of special forms of liquor, the verbiage with which we are supplied recognizes several kinds of warehouses. A distillery may establish a warehouse of its own for the storage of the product of the distillery. This is known as a distillery bonded warehouse. There may be a warehouse for the storage of any whiskies wherever manufactured. This is known as a general (or special) bonded warehouse. To facilitate the administration of the internal revenue and national prohibition laws, the Commissioner of Internal Revenue is authorized to collect from scattered or unfit warehouses "whiskies in bond" and store them in designated warehouses conveniently located. These are known as bonded warehouses for concentration purposes. We thus have for our purposes three kinds of warehouses, viz. distillery bonded warehouses, general (and perhaps special) bonded warehouses, and bonded warehouses for concentration purposes. There may thus be a distillery bonded warehouse or a general (or special) bonded warehouse with or without the added feature of being a warehouse to which the Commissioner has sent whiskies for concentration purposes. The plaintiff and defendant are each primarily distillery bonded warehouses and each has been designated as a warehouse for concentration purposes. Neither is a "general bonded warehouse." The whisky in suit is the property of the plaintiff, but is in the custody of the defendant in the dual rôle of an ordinary warehouseman and as a caretaker of the whisky under the directions of the law.

There is a further fact distinction (whether of any legal value or not) that the part of the whisky for which the New Hellam certificates were issued came to the defendant because of removal orders issued by the Commissioner for concentration purposes. There is danger that the question of property rights will become entangled, if not confused, with questions which concern only what may be called the administrative machinery of the revenue and prohibition laws.

Words and phrases which have only a descriptive motive for their use should not be mistaken for words and phrases which are chosen for purposes of designation. We have not the phraseology of these several acts of Congress before us, but we assume they were framed to meet common fact situations. One was that a distillery would accumulate a stock which, although a finished product had not been sold, or, if sold, had not been delivered. For law administrative purposes, the device of a bonded warehouse

might well. be employed. The distillery would have need to store no whiskies, except its own and hence the establishment of distillery bonded warehouses. Another fact situation was that one who had become the owner of some of the whisky thus stored, but who was not ready to pay the tax, for the purposes of his convenience or because of a preference, with or without reason, might not wish to leave the whisky in the distillery warehouse. This is doubtless the genesis of the general (or special) bonded warehouse. These names are thus merely descriptive. To prevent evasions of the tax or after prohibition unlawful diversions of the whisky, the owner of the whisky might (as was at one time the case) be restricted to a named number of removals. After the adoption of the policy of the concentration of whiskies in bond, as the removal was at the instance of the Commissioner, and the power to remove was restricted to the named purpose, there was a call for a third descriptive appellation and bonded warehouses for concentration purposes became part of the terminology of the trade, the law and the regulations. There were thus several kinds of warehouses for the storage of liquor with different appellations, each of which was purely descriptive. All of them were bonded warehouses and so named; some of them were connected with distilleries and so called; some of them had nothing to do with distilleries as such, but were warehouses where whiskies could be stored generally and were called by the chosen descriptive name and some of them were selected by the Commissioner for concentration purposes and had applied to them that phrase.

A part of the fact situation we assume to have been that a distillery bonded warehouse was not bound to accept any whiskies on storage and of its own choice (and perhaps by the law of its creation) was limited to the custody of whiskies made by it. A general bonded warehouse, on the contrary, necessarily invited and accepted the storage of any whiskies. A warehouse for concentration purposes was again necessarily one selected by the Commissioner, in the choice of which neither the owner of the whisky nor the former warehouse had any voice. The storage of the whisky may be presumed to be a source of profit to the warehouse and a convenience to the Commissioner. A regulation was accordingly made and promulgated that no whisky would be permitted to be removed (after storage for concentration purposes) without the consent of the warehouse in which stored. This implied that

otherwise its transfer was allowable as the limitation on the number of successive removals had been repealed, nor do we see any reason to deny the right, the regulation requiring the consent of the warehouseman having been abandoned as unreasonable. The only basis for a denial is the distinction between distillery bonded warehouses and general bonded warehouses. It is admitted (in effect) that, if the removal contemplated was to a general bonded warehouse, the plaintiff would have the right to make the transfer. We see nothing of real value in this distinction and nothing on which to base it other than the mere verbiage of the act of Congress.

The defendant describes itself of the dual type of a bonded distillery warehouse designated as a warehouse for concentration purposes. If the distinction means that a distillery bonded warehouse is restricted to the storage of its own whiskies and that other whiskies must be stored in general bonded warehouses, then the plaintiff partakes further of the third type because it has in store whiskies not of its own manufacture. It is to this extent a special bonded warehouse. There is admittedly no distinction between the warehouse of the plaintiff and that of the defendant.

The only legal question raised by this branch of the defense is, as we read the case, settled by Simon v. Frankfort Distillery (C. C. A.) 2 F.(2d) 949. It is urged upon our attention that the Frankfort Case was one of a removal to a general bonded warehouse. However the fact may have been, the ruling is not based upon it, but rules broadly, so as to include in its ruling the instant case. █ The other branches of the defense are not strongly urged. When title is asserted by a suit to property to which a third party may lay a claim, the defendant may protect himself by a call upon such third party to intervene to defend his claim of right, or be precluded by the judgment or decree entered or the defendant may defend by setting up the third party claim of title in denial of that of the plaintiff.

So far as the defendant here has pursued this latter course, the fact finding is made in favor of the plaintiff. Even if any others than the defendant were properly to be made parties to the suit, the plaintiff has brought itself within the equity rules in omitting them, and whatever rights such third parties may have may be saved to them as the equity rules provide. There is, of course, more than a mere property right which must here appear before there can be a removal of this

whisky but the requirements of the revenue laws and of the National Prohibition Act may be met in the form of decree entered.

A decree granting the prayers of the bill, so far as is in accordance with this opinion, and for the allowance of costs to the plaintiff, may be submitted.